UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **WILFREDO AROCHO** <br> 136 Weymouth Road <br> Buena, NJ 08310 <br><br> **individually and as a representative of the classes,** <br><br> Plaintiff, <br><br> v. <br><br> **PEPCO HOLDINGS, INC.** <br> 701 9th Street NW <br> Washington, D.C. 20068 <br><br> Defendant. | Civil Case No. <br><br> **CLASS ACTION COMPLAINT** <br> **(JURY TRIAL DEMANDED)** |

Plaintiff Wilfredo Arocho ("Arocho" or "Plaintiff"), by and through his attorneys, on behalf of himself and the classes set forth below, brings the following Class Action Complaint against Pepco Holdings, Inc. ("PHI" or "Defendant").

**INTRODUCTION**

1. This consumer class action is brought under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") and the New Jersey Fair Credit Reporting Act, N.J. Stat. §§ 56:11-29 – 11-41 ("NJFCRA") against an employer who routinely violates the FCRA's and the NJFCRA's basic protections by failing to obtain the proper authorization to conduct background checks as required by the FCRA and the NJFCRA.

**THE PARTIES**

2. Plaintiff Arocho is an individual person and a resident of Buena, New Jersey.

3. Defendant Pepco Holdings, Inc. is headquartered in Washington, D.C. and incorporated in Delaware. PHI is a holding company and describes itself as "one of the largest

1

energy delivery companies in the Mid-Atlantic Region, serving about 2 million customers." http://www.pepcoholdings.com/about/ (last visited May 8, 2014).

4. PHI owns numerous subsidiaries. According to its website, these subsidiaries include:

 a. Pepco, described on PHI's website as "a regulated electric utility delivering electricity to more than 800,000 customers in Maryland and the District of Columbia";

 b. Delmarva Power, described on PHI's website as "a regulated electric and natural gas utility delivering electricity to more than 500,000 electric delivery customers in Delaware and the Delmarva Peninsula, and over 122,000 natural gas delivery customers in northern Delaware";

 c. Atlantic City Electric, described on PHI's website as "a regulated electric utility delivering electricity to 545,000 customers in southern New Jersey"; and

 d. Pepco Energy Services, described on PHI's website as "a leading provider of deregulated energy and energy-related services for residential, small business and large commercial customers."[1]

**JURISDICTION AND VENUE**

5. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction under 28 U.S.C. § 1367.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these claims occurred in this District and Defendant resides in this District.

---

[1] *See* http://www.pepcoholdings.com/about-us/ (site last visited September 9, 2014).

**STATUTORY BACKGROUND**

7. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

8. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

9. Congress was particularly concerned about the use of consumer reports by employers to deny otherwise qualified job applicants or to take other adverse actions against employees. Accordingly, Congress required employers to make a clear and conspicuous written disclosure to employees and job applicants, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes. 15 U.S.C. § 1681b(b)(2). This is commonly referred to as the "stand-alone disclosure" requirement.

10. The FCRA stand-alone disclosure requirement ensures that employees and job applicants know when reports about them are being generated. This notice is one of many elements of the FCRA that combine to ensure that consumers are aware that consumer reports are generated about them, that they know their rights, and that they have the opportunity to dispute errors in their reports. 15 U.S.C. § 1681b(b)(3)(A) (pre-adverse employment action notice requirement); § 1681b(4)(B) (notification of national security investigation); § 1681c(h) (notification of address discrepancy); § 1681d(a) (disclosure of investigative report); § 1681g

(full file disclosure to consumers); § 1681k(a)(1) (disclosure regarding the use of public record information); § 1681h (form and conditions of disclosure); § 1681m(a) (notice of adverse action).

11. The NJFCRA was passed in 1997 for the purpose of providing "additional consumer protection with respect to consumer credit reports and credit reporting agencies consistent with the provision of the [FCRA]." N.J. Stat. Ann. § 56:11-29.

12. The NJFCRA also contains a stand-alone disclosure requirement identical to that in the FCRA. N.J. Stat. Ann. § 56:11-31(c)(1).

13. As discussed below, PHI routinely violates the FCRA and the NJFCRA by failing to provide the required stand-alone disclosure to employees and job applicants.

## ALLEGATIONS RELATING TO PLAINTIFF WILFREDO AROCHO

14. In October 2013, Plaintiff Wilfredo Arocho applied through PHI for a position as a Senior/Lead Engineering Associate.

15. Arocho interviewed for the position shortly thereafter, and was immediately offered a position as a senior engineering associate with PHI's subsidiary, Atlantic City Electric.

16. Arocho was offered a job, and then was asked to fill out forms relating to PHI procuring a background check on him.

17. Included within these forms was the three-page "Background Authorization & Notification Form." ("Background Form," attached as Exhibit A.)

18. In addition to authorizing PHI to perform a background check and procure a consumer report on Arocho, the Background Form contains a variety of extraneous information.

19. *First,* the Background Form includes a liability waiver that purports to release third parties from liability for any information they provide as part of the background check process. Specifically, the Background Form states:

> I authorize all corporations, companies, credit agencies, educational institutions, persons, law enforcement agencies, government agencies, workers' compensation agencies, criminal and civil courts, and former employers, (except where I have specifically indicated no contact with my present employer) to release any and all information they have about me and *I release them from any liability and responsibility from doing so.*

(emphasis added). (Ex. A.)

20. *Second*, the Background Form includes a lengthy description of what the consumer reporting agency providing the report may do with the consumer's personal information, and purports to authorize electronic and international transfer of the consumer's personal information, stating:

> I understand that the Consumer Reporting Agency may transmit my personal information to its agents and information sources as necessary throughout the course of business. I understand and authorize that some or all of this information about me may be transmitted electronically and, when required, may be transferred across international borders. I understand that supplemental forms and/or authorizations may be required to obtain international information and that host-country and receiving country privacy laws will be observed if information is transferred across international borders.

21. *Third,* the Background Form required Arocho to certify a variety of things which are wholly unrelated to PHI's procurement of a background report on him, including:

    a.    that Arocho had been assigned a unique user name and password and that he was Wilfredo Arocho;

    b.    that all of Arocho's answers on his employment application were true to the best of his knowledge;

    c.    that Arocho consented to receive the form electronically; and

        d.       that Arocho's electronic signature was as binding as a physical signature.

22. Because the Background Form contains a purported liability waiver, a purported authorization for electronic and international transfer of Arocho's information, and a variety of other extraneous information as set forth herein and indicated on the Background Form, the Background Form does not constitute a stand-alone disclosure as required by 15 U.S.C. § 1681b(b)(2) and N.J. Stat. Ann. § 56:11-31(c)(1).

23. Aside from the Background Form, Arocho was not provided with any documents whatsoever which pertained in any way to Defendant's procuring a consumer report on him.

24. Regardless, on approximately October 18, 2013, PHI procured a consumer report on Arocho from consumer reporting agency Verifications, Inc. ("Verifications"). The report identified a New Jersey address for Mr. Arocho.

25. The October 18, 2013 report from Verifications indicated that Arocho had a pending criminal charge.

26. In reporting the pending criminal charge to PHI, Verifications provided PHI with information it did not request, because PHI only asks Verifications to provide information about convictions, not pending charges.

27. Because its initial report had exceeded the scope of PHI's request for information by including information about a pending criminal charge, on or about October 28, 2013, after the initial report had already been sent to PHI, Verifications unilaterally amended its report to remove information about the pending charge.

28. On or about October 29, 2013, Verifications mailed Arocho a complete copy of the entire amended report that it had provided to PHI.

29. After Arocho received the report from Verifications, on November 12, 2013, PHI informed Arocho that PHI was delaying Arocho's start date as an employee of Atlantic City Electric Company due to the pending charge, and that the decision was based on information in the consumer report from Verifications.

30. A few weeks later, on approximately December 3, 2013, PHI informed Arocho that it was rescinding its offer of employment.

31. PHI's procurement of consumer reports on Arocho violated the law.

32. More than fifteen years ago, the Federal Trade Commission emphasized that including a liability waiver in a disclosure form, as PHI did here, is a violation of the FCRA. *Letter from William Haynes, Fed. Trade Comm'n, to Richard W. Hauxwell, CEO Accufax Div.* (June 12, 1998), available at 1998 WL 34323756 (explaining that "inclusion of a . . . waiver in a disclosure form will violate Section [1681b(b)(2)(A)] of the FRCA, which requires that a disclosure consist 'solely of the disclosure that a consumer report may be obtained for employment purposes'").

33. Courts that have addressed liability waivers placed in disclosure forms have agreed with the FTC that including such a waiver violates the FCRA's stand-alone disclosure requirement. *Dunford v. American Databank, Inc.*, No. C 13-03829, 2014 WL 39567744 at *6 (N.D. Cal. Aug. 12, 2014) (finding document that contained a liability release to "not consist solely of the disclosure because it added a paragraph exonerating [the defendant]"); *Avila v. NOW Health Grp., Inc.*, No. 14 C 1551, 2014 WL 3537825 at *2 (N.D. Ill. July 17, 2014) (finding inclusion of liability waivers to be "contrary to the express language of the FCRA, which requires a disclosure 'in a document that consists solely of the disclosure'"); *Singleton v. Domino's Pizza*, No. 11-1823, 2012 WL 245965 at *9 (D. Md. Jan. 25, 2012) ("[B]oth the

statutory text and FTC advisory opinions indicate that an employer violates the FCRA by including a liability release in a disclosure document."); *Reardon v. Closetmaid Corp.*, No. 2:-8-cv-01730, 2013 WL 6231606 at *10-11 (W.D. Pa. Dec. 2, 2013) (finding disclosure with liability waiver to be "facially contrary to the statute at hand, and all of the administrative guidance").

34. Further, the consumer reporting agency used by PHI has also warned its customers that "nothing else (including a release of liability) should be a part of the [disclosure and authorization] form." Verifications, Inc., "Court Advises: 'Solely' Means Solely Regarding Disclosure and Authorization" (Feb. 10, 2012), at https://www.verificationsinc.com/eng/whatwevelearned/complianceprofile.cfm?szID=104 (last visited May 8, 2014), attached as Exhibit B.

35. PHI's inclusion of other extraneous information in its Background Form also violates the clear statutory text, which requires that a stand-alone disclosure be made, and provides only a single exception to the stand-alone requirement, namely the inclusion of an authorization for "the procurement of the report by that person."

36. PHI knew it was violating the FCRA. As part of its service agreement with Verifications, PHI acknowledged that the reports it obtains from Verifications are consumer reports.

37. In its contract with Verifications, PHI also agreed that before obtaining a consumer report, PHI would provide a disclosure in writing to the consumer that a consumer report will be obtained for employment purposes and that such disclosure would be made in a document consisting solely of the disclosure.

38. PHI also agreed to contact Verifications to obtain special procedures for preparation and use of a consumer report in the case of suspected misconduct or violation of

state, federal, or local law. PHI did not procure Arocho's report using the special procedures referred to in the contract.

39. PHI did not procure Arocho's report in connection with any investigation of suspected misconduct relating to employment, or compliance with federal, state, or local laws and regulations, the rules of a self-regulatory organization, or any preexisting written policies of the employer. PHI has not, at any time, engaged in any investigation whatsoever of Arocho.

40. Had Arocho's job offer not been terminated, Arocho would have been employed by PHI's subsidiary, Atlantic City Electric Company. PHI has repeatedly denied that it is the employer of its subsidiaries' employees, emphasizing that its role with respect to its subsidiaries' employees is administrative in nature, and not the kind of role that would render it an employer. *See Taylor v. Delmarva Power and Light Co. & Pepco Holdings, Inc.,* 2011 WL 826356, Case No. 1:10–CV–01796 RDB (D. Md. March 7, 2011); *Id.*, ECF No. 9-1 at 6 (denying that employee of Delmarva – a PHI subsidiary – was a PHI employee by arguing that "[t]here is no allegation PHI controls the daily employment practices and decisions of Delmarva, or that PHI dominates Delmarva's operations in such a way that PHI and Delmarva are really one entity and one employer, or that PHI exercises a degree of control over Delmarva that exceeds the control normally exercised by a parent corporation (or, in fact, even that PHI exercises any control over Delmarva)"); *Id.*, ECF No. 35-1 at 7 (PHI arguing that no facts "support a finding that PHI dominates or exercises control over Delmarva's daily operations such that PHI could be considered Plaintiff's 'employer.'"); *see also O'Toole v. Pepco Holdings, Inc.*, 1:12-cv-01362-LPS (D. Del. 2012), ECF No. 4 (denying that plaintiff was employed by PHI and asserting that he was employed by PHI Service Co.); *Church v. Delmarva Power & Light Co.*, 1:10-cv-01795-CCB (D. Md. 2010), ECF No. 18 (denying that PHI was employer of plaintiff but admitting that

Delmarva was plaintiff's employer); *Page v. Pepco Holdings, Inc.*, 10-cv-00882 (D. Del. 2010), ECF No. 4 (denying that plaintiff was employed by PHI and asserting that she was employed by PHI Service Co.); *Baysmore v. Potomac Electric Power Co.*, 8:06-CV-00218-DKC (D. Md. 2006), ECF No. 6 (noting plaintiff was employed by Potomac Electric Power Co. and not by PHI). Like PHI's other subsidiaries, Atlantic City Electric Company routinely admits that it is an employer. *Durham v. Atlantic City Electric Co.*, 1:08-cv-1120 (D.N.J. 2008), ECF No. 3 (admitting that plaintiff was employed as a dispatcher by Atlantic City Electric Co.); *Gould v. Atlantic City Electric f/k/a Conectiv*, 07-cv-3354 (D.N.J. 2007), ECF No. 3 (admitting that plaintiff was employed by Atlantic City Electric in an ERISA claim against it).

41. Nonetheless, PHI obtained a report on Arocho from Verifications without providing him with the stand-alone disclosure required by the FCRA.

## CLASS ALLEGATIONS

42. Plaintiff asserts Count I on behalf of the FCRA class defined as follows:

> All individuals on whom PHI obtained a consumer report for employment purposes in the two years preceding the filing of this Complaint and continuing through the date the class list is prepared.

43. Plaintiff asserts Count II on behalf of the NJFCRA sub-class defined as follows:

> All individuals on whom PHI obtained a consumer report for employment purposes in the six years preceding the filing of this Complaint and continuing through the date the class list is prepared and whose report lists a New Jersey address as the address for the subject of the report.

44. <u>Numerosity</u>: The classes are so numerous that joinder of all class members is impracticable. PHI has obtained thousands of consumer reports during the class period.

45. <u>Typicality</u>: Plaintiff's claims are typical of the class members' claims. The FCRA and NJFCRA violations committed by Defendant resulted from Defendant's routine use

of a standardized and illegal form.  Defendant treated Plaintiff in the same manner as other class members in accordance with its standard policies and practices.

46. <u>Adequacy</u>:  Plaintiff will fairly and adequately protect the interests of the classes, and has retained counsel experienced in complex class action litigation.

47. <u>Commonality</u>:  Common questions of law and fact exist as to all members of the classes and predominate over any questions solely affecting individual members of the classes.  These common questions include:

   a. Whether PHI violated the FCRA by including a liability waiver and other information in its Background Form;

   b. Whether PHI violated the NJFCRA by including a liability waiver and other information in its Background Form;

   c. Whether PHI's violation of the FCRA was willful; and

   d. Whether PHI's violation of the NJFCRA was willful.

48. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the classes predominate over any questions affecting only individual members of the classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA and the NJFCRA.  Members of the classes do not have an interest in pursuing separate actions against Defendant, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution, and Plaintiff is unaware of any similar claims brought against PHI by any members of the classes on an individual basis.  Class certification also will obviate the need for unduly duplicative litigation that might result in

inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

## COUNT I
### 15 U.S.C. § 1681b(b)(2)
### *Failure to Provide Stand-Alone Disclosure*
### *On Behalf of Plaintiff and the FCRA Class*

49. Defendant repeatedly violated the FCRA by procuring consumer reports on Plaintiff and the FCRA Class members without making the stand-alone disclosure required by the FCRA. *See* 15 U.S.C. § 1681b(b)(2).

50. The foregoing violations were willful. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other class members under 15 U.S.C. § 1681b(b)(2)(A)(i). Defendant's willful conduct is reflected by, *inter alia*, the following:

    (a)    The FCRA was enacted in 1970; Defendant has had over 40 years to become compliant;

    (b)    Defendant's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

    (c)    Defendant knew or had reason to know from its communications with Verifications that Defendant's conduct violated the FCRA;

    (d)    Defendant certified to Verifications that it would comply with the disclosure requirements of the FCRA;

    (e)    Defendant repeatedly and routinely uses the disclosure it used with Plaintiff to procure consumer reports;

    (f)    Despite the pellucid statutory text and a depth of guidance, Defendant systematically procured consumer reports without first disclosing in writing to the consumer *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes; and

    (g)    Defendant knowingly benefitted from its unlawful conduct by making it easier to obtain information for its reports;

    (h)    By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

51.    Plaintiff and the FCRA Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).  Plaintiff and the FCRA Class members are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).  Plaintiff and the FCRA Class members are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

<u>**COUNT II**</u>
**N.J. Stat. Ann. § 56:11-31(c)(1)**
*<u>Failure to Provide Stand-Alone Disclosure</u>*
**On Behalf of Plaintiff and the NJFCRA Sub-Class**

52.    Defendant repeatedly violated the NJFCRA by procuring consumer reports on Plaintiff and NJFCRA Sub-Class members without making the stand alone disclosure required by the NJFCRA.  *See* N.J. Stat. Ann. § 56:11-31(c)(1).

53. The foregoing violations were willful. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other class members under N.J. Stat. Ann. § 56:11-31(c)(1). Defendant's willful conduct is reflected by, *inter alia*, the following:

   a. The NJFCRA was enacted in 1997. Defendant has had over 15 years to comply.

   b. Defendant's conduct is inconsistent with the plain language of the statute, and longstanding FTC and judicial guidance about the 15 U.S.C. § 1681b(b)(2) which is identical to the NJFCRA provision at issue;

   c. Defendant knew or had reason to know from its communications with Verifications that Defendant's conduct violated the NJFCRA;

   d. Defendant certified to Verifications that it would comply with the disclosure requirements of the FCRA, which are identical to the NJFCRA requirements;

   e. Defendant repeatedly and routinely uses the disclosure it used with Plaintiff to procure consumer reports;

   f. Despite the pellucid statutory text and a depth of guidance, Defendant systematically procured consumer reports without first disclosing in writing to the consumer *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes;

   g. Defendant knowingly benefitted from its unlawful conduct by making it easier to obtain information for its reports; and

      h.      By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

54.      Plaintiff and the NJFCRA Sub-Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to N.J. Stat. Ann. § 56:11-38(a)(1). Plaintiff and the NJFCRA Sub-Class members are also entitled to punitive damages for these violations, pursuant to N.J. Stat. Ann. § 56:11-38(a)(2). Plaintiff and the NJFCRA Sub-Class members are further entitled to recover their costs and attorneys' fees, pursuant to N.J. Stat. Ann. § 56:11-38(a)(3).

## PRAYER FOR RELIEF

55.      WHEREFORE, Plaintiff, on behalf of himself and the classes, prays for relief as follows:

      a.      Determining that this action may proceed as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure;

      b.      Designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the classes;

      c.      Issuing proper notice to the classes at Defendant's expense;

      d.      Declaring that Defendant violated the FCRA and the NJFCRA;

      e.      Declaring that Defendant acted willfully, in knowing or reckless disregard of Plaintiff's rights and its obligations under the FCRA and the NJFCRA;

      f.      Awarding statutory damages as provided by the FCRA and the NJFCRA;

      g.      Awarding punitive damages as provided by the FCRA and the NJFCRA;

h.  Awarding reasonable attorneys' fees and costs as provided by the FCRA and the NJFCRA; and

i.  Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

56. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and the classes demand a trial by jury.

Dated:

Respectfully submitted,

MEHRI & SKALET, PLLC
Michael D. Lieder, DC Bar No. 444273
1250 Connecticut Avenue N.W., Suite 300
Washington, D.C. 20036
Telephone: (202) 822-5100
Facsimile: (202) 822-4997
mlieder@findjustice.com

NICHOLS KASTER, PLLP
E. Michelle Drake, MN Bar No. 0387366*
Joseph Hashmall, MN Bar No. 392610*
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 215-6870
drake@nka.com
jhashmall@nka.com

ATTORNEYS FOR PLAINTIFF AND THE CLASSES

*pro hac vice motions forthcoming